UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Robin Morse

    v.                                              Civil No. 12-cv-446-PB

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Robin Morse moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, I recommend that the matter be remanded to the Acting Commissioner for further proceedings consistent with this report and recommendation.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (citations omitted).  Moreover, the court "must uphold the

[Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether the Acting Commissioner's decision is supported by substantial evidence, this court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, document number 10. That statement is part of the court's record and will be summarized here, rather than repeated in full.

Morse has experienced migraine headaches since she was a teenager. In 2009, at age 47, she complained of joint pain to her primary-care physician and was referred to Dr. Nicole Orzechonski, a rheumatologist. Dr. Orzechonski examined Morse, determined that she had "all of the fibromyalgia tender points," Administrative Transcript ("Tr.") 239, and diagnosed her with fibromyalgia.[1]

---

[1] "Fibromyalgia" is defined as follows: "A common syndrome of widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances; the cause is unknown." Stedman's Medical Dictionary 725 (28th ed. 2006).

3

Morse's migraine headaches and fibromyalgia pain began to worsen in June 2010.  At that time, a nurse reported that Morse was "having a difficult time coping with the increased pain in her head, neck, shoulders, and arms."  Tr. 248.  As a result of her worsening conditions, Morse stopped working as a home health aide on July 2, 2010.  In August, Morse reported an incident that had occurred in the previous month, which Dr. Orzechonski diagnosed as an episode of syncope.[2]  Around this time Morse also stopped driving because of lightheadedness.

Beginning in the summer of 2010, Morse saw a series of specialists for dizziness, syncope, lightheadedness, and headaches.  Morse saw Dr. Christopher Ryder, an otolaryngologist,[3] who found no evidence of sinus disease after a physical examination and interpretation of a CT scan.  Morse saw Dr. David Coffey, a neurologist, who reported that an MRI/MRA of her brain was normal.  She saw Dr. Rowland Hazard, who documented that her cervical range of motion was "moderately limited by axial pain," Tr. 410, and that a cervical x-ray "show[ed] degenerative narrowing. . . with [an] anterior

---

[2] "Syncope" is defined as follows: "Loss of consciousness and postural tone caused by diminished cerebral blood flow." Stedman's, supra note 1, at 1887.

[3] "Otolaryngologist" is defined as follows: "A physician who specializes in. . .  [t]he combined specialties of diseases of the ear, pharynx, and larynx."  Stedman's, supra note 1, at 1395.

4

osteophyte,"[4] id.  From the summer of 2010 through the present, Morse's primary care physicians, first Dr. Barbara Dalton and later, Dr. Shawn Sutton, and her rheumatologist, Dr. Orzechowski, have continued to document her complaints of dizziness, lightheadedness, headaches, and joint pain.

Morse filed her application for Social Security disability insurance benefits in October of 2010.  She completed a form titled "Function Report" in connection with her application.  In that report she stated, among other things, that her conditions affected her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, remember, complete tasks, concentrate, and use her hands.  Morse stated that she rarely drove because of a fear of dizziness, and spent most of her time at home.  She further reported that while at home she prepared simple meals, watched television, played computer games, cared for pets, and occasionally visited with family.  Finally, she reported that her ability to get around was limited by the "chance of getting dizzy or off balance."  Tr. 172.

Following Morse's application for disability insurance benefits, several medical professionals evaluated her mental and physical condition.  In January 2011, Dr. William Jamieson completed a Psychiatric Review Technique form based on Morse's

---

[4] "Osteophyte" is defined as follows: "A bony outgrowth or protuberance."  Stedman's, supra note 1, at 1391.

5

medical record.  He determined that Morse had an anxiety disorder that was not severe and that imposed no functional limitations.

In January 2011, Dr. Edouard Carignan conducted a consultative psychological examination of Morse.  He concluded that Morse did not have psychological difficulty in the following domains: (a) activities of daily living; (b) social functioning; (c) understanding and remembering instructions; (d) concentration and task completion; and (e) reaction to stress and adaptation to work or work-like situations.

Dr. Charles Meader, a state-agency consulting physician, conducted an assessment of Morse's physical residual functional capacity ("RFC") based on her medical records in January of 2011.  Dr. Meader opined Morse could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of at least two hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday.  Dr. Meader also found that Morse was not limited in her ability to push and/or pull, could perform all six postural activities listed on the RFC assessment form, and had no manipulative, visual, or communicative limitations.  Dr. Meader did, however, find that Morse needed to avoid concentrated exposure to noise and hazards.

Morse's disability claim was denied in January 2011. After her claim was denied, Morse requested and received a hearing before an Administrative Law Judge ("ALJ").

In July 2011, Dr. Karen Huyck, "a board-certified occupational environmental medical physician," tr. 377, examined Morse. Based in part on that physical examination, Dr. Huyck noted trigger points, difficulty with tandem walking, tenderness, decreased hip and knee strength, and unsteadiness. Under the heading "Assessment," Dr. Huyck opined that: (1) Morse had an affective disorder[5] that met the severity level necessary for finding an impairment to qualify as disability under the applicable Social Security regulations; and (2) Morse's capacity for work was further limited by her physical condition. Dr. Huyck also stated that Morse was incapable of work due to her mental and physical imparments.

In preparation for her hearing, Morse asked Dr. Sutton, who replaced Dr. Dalton as her primary care physician sometime after August 2010, to prepare a disability report. Dr. Sutton completed a physical exam and a review of Morse's medical records in April of 2012. Dr. Sutton wrote:

> Based on my recent knowledge [of Morse] and review of her previous medical records. . . reported symptoms and limitations lead me to believe that she is unable

---

[5] "Affective disorder" is defined as follows: "A group of mental disorders characterized by a mood disturbance." Stedman's, supra note 1, at 567.

7

>    to be completely independent in her Activities of
>    Daily Living nor is she able to perform Basic Work
>    Activity.  The frequency of symptoms and limitations
>    caused by her basilar migraines and fibromyalgia would
>    seem to make if difficulty [sic] for her to attend and
>    be fully engaged in meaningful work.  Review of her
>    chart suggests that her health issues, both physical
>    and psychological, have been present for at least a
>    couple of years and have not changed significantly
>    since her evaluation and diagnosis of these conditions
>    by her previous providers in 2010.

Tr. 462-63.  Dr. Sutton also noted that Morse has tried several medications to manage her symptoms, all of which were unsuccessful.

At Morse's hearing on April 10, 2012, the ALJ received testimony from Morse and a vocational expert ("VE").  Morse testified that her most serious condition was neck pain.  She also testified that she suffered from frequent headaches that caused her to experience problems with vision and dizziness.  She testified that those problems prevented her from driving.

After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

>    3. The claimant has the following severe impairments:
>    Fibromyalgia syndrome, basilar migraine headaches,
>    obesity, sleep apnea, posttraumatic stress disorder
>    and dysthymia (20 CFR 404.1520(c)).
>
>    . . .
>
>    4. The claimant does not have an impairment or
>    combination of impairments that meets or medically
>    equals the severity of one of the listed impairments
>    in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
>    404.1520(d), 404.1525 and 404.1526).

8

. . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders, ropes or scaffolds. She can occasionally climb stairs. She cannot kneel or crawl, but no [sic] other problems with postural activities. She can occasionally interact with co-workers and supervisors. She can interact with the public on a superficial level, but not on a regular and sustained basis. She can sustain concentration, persistence, and pace for 2-hour periods at a time. In addition, 2-3 weeks per month the claimant is unable to drive on a regular basis. She is limited to simple, repetitive-type work. She would have difficulty walking for prolonged periods, but could walk from station to station and not more than 5 minutes inside on a flat surface. She would also be absent about two times per month.

. . .

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

Tr. 16, 17, 20, 22, 23. Based on the VE's testimony, the ALJ determined Morse could work as a marker or an addresser.

## Discussion

According to Morse, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) failed to properly

9

evaluate opinion evidence when determining her RFC; (2) erred in evaluating her credibility; and (3) erred because there was not substantial evidence to support his finding that she could perform jobs existing in significant numbers in the national economy.  Morse's first argument is persuasive and dispositive.

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Morse was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding

> sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

11

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

### B. Morse's Arguments

Morse argues that the ALJ's decision should be reversed because he erred in the way he handled the opinions of Drs. Huyck, Meader, and Sutton.  With regard to Drs. Huyck and Meader, Morse is correct.  Accordingly, this Report and Recommendation focuses on the manner in which the ALJ dealt with those opinions.

#### 1. Legal Standard

The Commissioner and, by extension, the ALJ, must consider and evaluate all the medical opinions in a claimant's case record.  See 20 C.F.R. §§ 404.1527(b) & (d).  "Medical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental

12

restrictions." 20 C.F.R. § 404.1527(a)(2). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. §404.1527(e)(2)(ii).

When determining the weight to give a medical opinion, the ALJ considers the following factors, among others: (1) the length of treatment and frequency of examination; (2) the consistency of the opinion with the record as a whole; and (3) the specialization of the healthcare professional. See 20 C.F.R. § 404.1527(c). Finally, administrative findings, such as a claimant's RFC, or whether he or she is disabled, are reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996). When a healthcare provider does render an opinion on an issue reserved to the Commissioner, the ALJ is not required to give that opinion controlling weight. However, "opinions from any medical source about issues reserved to the Commissioner must never be ignored." Id.

### 2. Dr. Huyck's Opinion

Morse argues that the ALJ erred in his evaluation of Dr. Huyck's opinion because he failed to properly address Dr. Huyck's assessment of her physical condition. She is correct.

13

The office note resulting from Dr. Huyck's examination of Morse includes descriptions of Morse's current medical and psychiatric symptoms, results of a physical examination, and an assessment that provides, in pertinent part:

> Ms. Morse . . . clearly meets Social Security disability Blue Book Criteria 12.04 for Affective Disorders as described above in "Current Psychiatric Symptoms." Her work capacity is further diminished by her coexisting co-morbid conditions, which include musculoskeletal functional deficits and pain from rheumatology-confirmed fibromyalgia and severe dizziness and episodes of syncope related to basilar migraines not responsive to various treatments.
>
> . . . .
>
> Based on my history, physical exam, review of her medical records and occupational history, discussion of her case with her treating providers, and my clinical experience, it is clear that Ms. Morse is not capable of engaging in gainful employment, primarily because of her psychiatric disability but also because of her medical disability.

Tr. 377.

The two paragraphs from Dr. Huyck's assessment quoted above include opinions that: (1) Morse's mental impairment met the criteria for an impairment listed in the Social Security regulations ("listed impairment"), see 20 C.F.R. §416.920 app. 1; (2) her work capacity was further diminished by four physical impairments; (3) she was unable to work due to her mental impairment; and (4) she was unable to work due to her physical impairment.  Dr. Huyck's second opinion is a medical opinion within the meaning of 20 C.F.R. §404.1527(a)(2).  However, her

14

first, third, and fourth opinions are not medical opinions within the meaning of that section.

Specifically, all three opinions deal with issues reserved to the Commissioner. Dr. Huyck's first opinion is an opinion that Morse's impairment meets the criteria for a listed impairment, which is an issue reserved to the Commissioner in 20 C.F.R. §404.1527(d)(2). Her third and fourth opinions deal with Morse's ability to work, which is an issue reserved to the Commissioner in 20 C.F.R. §404.1527(d)(1).

In the section of his decision devoted to determining Morse's RFC, the ALJ had this to say about Dr. Huyck's assessment:

> As for the opinion evidence, the undersigned has considered the opinion of examining physician Dr. Huyck at Exhibit 10. While she asserted that the claimant has an affective disorder that meets the severity of the impairment described at Listing 12.04, the undersigned notes that she did not provide any clinical observations to support this assertion. Moreover, her area of expertise is in occupational health and not in the field of psychiatry or mental illness. Her opinion is contradicted by observations from consultative psychologist Dr. Carignan and by the opinion of State Agency reviewing psychologist, Dr. Jamison. As such, the opinion is afforded only limited weight.

Tr. 22.

It is clear that the ALJ gave valid reasons for affording little weight to Dr. Huyck's opinion that Morse's mental impairment met the severity requirements for Listing 12.04.

15

But, Dr. Huyck's assessment included three other opinions that the ALJ did not address at all. Even though two of those opinions are on issues reserved to the Commissioner, the ALJ's failure to discuss them in any way warrants remand, as "opinions from any medical source about issues reserved to the Commissioner must never be ignored." SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996).

Moreover, the reasoning the ALJ relied upon to reject Dr. Huyck's opinion vis à vis Morse's mental condition would seem to cut the other way with regard to Morse's physical condition. First, Dr. Huyck did make clinical observations that supported her opinion. Specifically, she reported:

> Morse . . . [has] tender trigger points consistent with fibromyalgia. She walks with a wide-based gait and cautiously but is not antalagic.[6] She has some difficulty with toe, heel, and tandem walking, because of weakness and unsteadiness. She has tenderness to palpation over the mid thoracic vertebra, shoulders, and hips. She has decreased hip and knee strength bilaterally.

Tr. 377. Second, Dr. Huyck's assessment of Morse's physical condition was within her area of specialty as a board-certified occupational environmental medicine physician. Finally, Dr. Huyck's opinion concerning Morse's physical disability appears

---

[6] "Antalagic" is defined as follows: "Counteracting or avoiding pain, as a posture or gait assumed so as to lessen pain." Dorland's Illustrated Medical Dictionary 98 (31st ed. 2007).

16

to be largely consistent with the medical records from her treating physicians.

In sum, because the ALJ did not address Dr. Huyck's medical opinion and said nothing about two of her opinions on issues reserved to the Commissioner, the case must be remanded.

### 3. Dr. Meader's Opinion

Morse next argues that the ALJ failed to specify the weight given to, or reasons for the weight given to, the opinion of Dr. Meader, a state-agency reviewing physician. The entirety of the ALJ's reference to Dr. Meader's opinion reads:

> The residual functional capacity found herein is supported by the opinion of State Agency reviewing physician, Dr. Meader and by clinical observations from multiple sources establishing that the claimant has maintained normal motor, sensory, and reflex function and normal gait.

Tr. 22.

The Acting Commissioner concedes that "the ALJ did not explicitly articulate the precise weight he assigned to Dr. Meader's opinion," but did "adopt[] key findings from Dr. Meader's RFC assessment." Resp't's Mem. of Law (doc. no. 11-1) 6. The Acting Commissioner argues that the ALJ's failure to explain the weight he gave to Dr. Meader's opinion is harmless error because it can be inferred from the record and the RFC findings are supported by substantial evidence.

17

The problem with the Acting Commissioner's argument is that it is not the role of the Acting Commissioner or the court to fashion a rationale under which the ALJ could have sustainably accepted Dr. Meader's opinion.  See Dube v. Astrue, No. 1:10-cv-179-JL, 2011 WL 742520, at *36 n.15 (D.N.H. Feb. 24, 2011) ("[C]ounsel for the Commissioner ably posits numerous reasons '[l]ending support to the ALJ's disregard of Dr. Southworth's limitational assessments.' . . . It is the responsibility of the ALJ to undertake that analysis in the first instance, not the court."); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 916 (7th Cir. 2003).  The ALJ was obligated to explain the weight he gave Dr. Meader's opinion in his RFC assessment.  See SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  He did not.  On remand the ALJ should rectify that omission.

## Conclusion

For the reasons given, I recommend that: (1) the Acting Commissioner's motion for an order affirming her decision, document number 11, be denied; and (2) Morse's motion to reverse the decision of the Acting Commissioner, document number 8, be granted to the extent that the case is remanded to the Acting

18

Commissioner for further proceedings, pursuant to sentence four of 42 U.S.C. §405(g).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 268 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

August 21, 2013

cc: Raymond J. Kelly, Esq.
　　Robert J. Rabuck, Esq.